# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA MARGARITA BARBA DE LA TORRE and ALEJANDRO DIAZ, <br><br>                              Plaintiffs, <br>    v. <br><br> JERRY L. ICENHOWER, et al., <br><br>                              Defendants. | Case No. 09cv01161 BTM (BLM) <br><br> **ORDER DENYING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT** |

Defendants Mary Suzanne Icenhower and Brian S. Icenhower have filed a Motion to Dismiss the Fraud Claim [Doc. 55]. Also pending is Defendants' Motion for Summary Judgment on a variety of claims [Doc. 56]. For the following reasons, the Court **DENIES** Defendants' Motion to Dismiss and **DENIES** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

The Court set forth the facts of this case more comprehensively in its Order dated October 28, 2009. (See Doc. 19.) Here, the Court only recites the allegations in the Third Amended Complaint ("TAC") that are necessary for the resolution of the pending motion to

dismiss and motion for summary judgment. The Court's recitation of the alleged facts are taken from the TAC and are not factual findings.

At its core, this is a suit for damages arising out of the fraudulent sale of a Mexican villa. The TAC alleges that Hobert Icenhower (deceased), along with Defendants Jerry Icenhower and Ramiro Salcedo, conspired to defraud Plaintiffs by selling them a Mexican villa that had undisclosed encumbrances. (TAC ¶¶ 3, 14–16.) At the time these Defendants caused the villa to be transferred to Plaintiffs, Jerry Icenhower was in a Chapter 7 bankruptcy proceeding. (TAC ¶ 24.) In the process of consolidating and collecting Jerry Icenhower's assets, the trustee filed an avoidance action against Plaintiffs, which set forth in detail the facts underlying Plaintiffs' claims here. (TAC ¶ 29; Order dated Oct. 28, 2009, Doc. 19, at 5.) Plaintiffs defended the avoidance action, but eventually the bankruptcy court ruled that the sale of the villa to Plaintiffs was an avoidable transfer, and ordered Plaintiffs to transfer ownership of the villa to the bankruptcy estate. (TAC ¶ 33.) Plaintiffs, however, did not immediately comply with the order and were assessed remedial and coercive sanctions totaling nearly $1,500,000. (TAC ¶ 34.) Plaintiffs eventually executed an agreement that the bankruptcy court deemed satisfied the terms of the judgment. (Id.) Plaintiffs have appealed both the order to transfer the villa to the estate and the contempt order. (Id.)

Plaintiffs' First Amended Complaint alleged four causes of action: (1) fraud; (2) constructive trust; (3) equitable subrogation and indemnification; and (4) negligence per se. The Court dismissed all causes of action as time barred, except the claim for equitable subrogation and indemnification. (Order dated Oct. 28, 2009, Doc. 19.) The Court permitted Plaintiffs to file a Second Amended Complaint ("SAC"), which Plaintiffs filed on November 12, 2009 [Doc. 20].

The SAC added new allegations of a conspiracy and alleged that Hobert Icenhower and Defendants Jerry Icenhower and Ramiro Salcedo conspired to defraud Plaintiffs, take wrongful possession of Plaintiffs' money, and then launder and conceal that money. (SAC ¶¶ 3, 14–17.) Defendants Brian and Mary Icenhower moved to dismiss the SAC [Doc. 21],

as did Defendants Donna and Jerry Icenhower [Doc. 22]. The Court granted Defendants' Motion to Dismiss the conspiracy allegations and denied the Defendants' Motion to Dismiss the equitable subrogation and indemnification claims [Doc. 33]. Plaintiffs then filed a Motion for Reconsideration based on the existence of a tolling agreement between Hobert Icenhower and Plaintiffs [Doc. 42]. The Court granted Defendants' Motion for Reconsideration [Doc. 51] and permitted Plaintiffs to file a Third Amended Complaint, which they filed on April 26, 2010 [Doc. 54].

The TAC alleges three claims against the Hobert G. "Ike" Icenhower Defendants: (1) fraud; (2) imposition of constructive trust (unjust enrichment); and (3) money had and received. The TAC also alleges claims of equitable subrogation and indemnity against all Defendants.

Defendants Mary Suzanne Icenhower and Brian S. Icenhower have moved to dismiss the fraud claim, arguing that the fraud claim is not pleaded with enough particularity to satisfy the requirements of Federal Rule of Civil Procedure 9(b). Although there has not yet been any discovery, Defendants have also moved for summary judgment on the remaining claims of equitable subrogation and indemnity, imposition of constructive trust, and money had and received.

## II. DISCUSSION

**A.    Motion to Dismiss the Fraud Claim**

Defendants have moved to dismiss the fraud claim, arguing it is not pled with sufficient particularity to meet the standard of Federal Rule of Civil Procedure 9(b). A claim of fraud must have the following elements: "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (internal quotation marks omitted)). Federal Rule of Civil Procedure 9(b) requires

that each of these elements be pled with particularity. The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

Plaintiffs' fraud claim has been pled with sufficient particularity. Their allegations regarding Jerry Icenhower's filing for bankruptcy, creation of the shell company H&G, transfer of the villa to H&G and then to Plaintiffs, are all detailed enough to meet the requirements of Rule 9(b). They allege several specific misrepresentations that Jerry Icenhower made to Plaintiffs: (1) H&G was properly formed and capitalized, (2) H&G was owned by a group of Las Vegas investors, (3) Jerry Icenhower's personal bankruptcy would not affect the villa, and (4) there were no outstanding liens on the villa. (Compl. 41.) They further plead facts showing that Jerry Icenhower knew these representations to be false and intended to defraud Plaintiffs. Plaintiffs plead they reasonably relied on the misrepresentations and suffered damages as a result. Taken together, these facts are sufficient detailed to show all the elements of fraud and meet the requirements of Rule 9(b).

Although it is clear from the TAC that Jerry Icenhower made several misrepresentations to Plaintiffs, it is unclear whether Hobert Icenhower did. But Hobert Icenhower is liable for the torts of his coconspirators, Beltz Travel Serv., Inc. v. Int'l Air Transport Assoc., 620 F.2d 1360, 1367 (9th Cir. 1980) (In a civil conspiracy, "[a]ll conspirators are jointly liable for the acts of their co-conspirators."), so it is unnecessary to prove Hobert Icenhower himself made misrepresentations. If he was a part of the conspiracy then he is liable for Jerry Icenhower's actions as well as his own. See id. The Court must therefore determine whether the TAC sufficiently pleads Hobert Icenhower's participation in the conspiracy.

"[U]nder federal law a plaintiff must plead, at a minimum, the basic elements of a civil

conspiracy if the object of the conspiracy is fraudulent." Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 991 (9th Cir. 2006). Under California law, the elements of a conspiracy are "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damages resulting from such act or acts." Id. at 992 (citing Cellular Plus, Inc. v. Superior Court, 14 Cal. App. 4th 1224, 1236 (1993)). Because, as discussed above, Plaintiffs have adequately pled wrongful acts and damages, the question here is whether Plaintiffs have properly pled that Hobert Icenhower was a part of the conspiracy.

Many of Plaintiffs' allegations regarding Hobert Icenhower's participation in the formation of the conspiracy are conclusory. For example, they allege Hobert Icenhower "entered into an agreement to commit a variety of wrongful acts." (Compl. ¶ 14.) Although none of the allegations regarding the formation of the conspiracy are more specific than this, there are specific allegations regarding Hobert Icenhower's actions near the end of the conspiracy. Plaintiffs allege Hobert Icenhower received much of the money Plaintiffs used to buy the villa. (TAC ¶ 6.) As part of the $1.39 million they paid for the villa, on June 7, 2004 Plaintiffs paid $675,000 to Buckeye International Funding, Inc. (TAC ¶ 25.) Only three days later on June 10, Hobert Icenhower signed a promissory note for $675,000 payable to Buckeye International Funding, Inc. (TAC ¶ 16d; TAC Ex. B.) Because on a motion to dismiss the Court must make every reasonable inference in favor of the plaintiff, see Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995), the Court infers that the timing and amount of the promissory note was more than just a coincidence. Hobert Icenhower's execution of the promissory note in favor of Buckeye in the exact same amount that Plaintiffs paid to Buckeye for the villa, and Hobert Icenhower's close relationship with Jerry Icenhower, are sufficient grounds to infer that Hobert Icenhower was a part of the conspiracy. Even if Hobert Icenhower only entered into the conspiracy at a late stage, he can still be held liable for the preceding conspiratorial acts. Indus. Bldg. Materials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1343 (9th Cir. 1971) ("One who enters a conspiracy late,

with knowledge of what has gone before, and with the intent to pursue the same objective, may be charged with preceding acts in furtherance of the conspiracy.")

Plaintiffs have alleged the fraud with particularity and have alleged that Hobert Icenhower was a part of the conspiracy to defraud Plaintiffs. The Court therefore **DENIES** Defendants' Motion to Dismiss Plaintiffs' first cause of action for fraud.

**B.     Motion for Summary Judgment**

    1.     <u>Plaintiffs' Second Cause of Action for Imposition of Constructive Trust (Unjust Enrichment)</u>

To state a claim of unjust enrichment, a plaintiff must allege receipt of a benefit and unjust retention of the benefit at the expense of another. <u>Sandy v. McClure</u>, 676 F. Supp. 2d 866, 880 (N.D. Cal. 2009) (quoting <u>Lectrodryer v. SeoulBank</u>, 77 Cal. App. 4th 723, 726 (2000)). Plaintiffs allege that Defendants obtained Plaintiffs' purchase money, and as recently as 2008, Hobert Icenhower retained possession and control of all or a substantial portion of it. (TAC ¶¶ 48-49.) This satisfies the elements of unjust enrichment, as Plaintiffs allege that Hobert Icenhower received their purchase money and unjustly retained it at their expense. Defendants allege that Hobert Icenhower did not retain the funds because he used them for real-estate investment. Hobert Icenhower's use of the funds is irrelevant. All that matters is that he received them and held the funds from Plaintiffs. Defendants' Motion includes over 200 pages of exhibits which are mainly court orders in this and other cases, and Defendants do not reference any of these exhibits with regards to the unjust enrichment claim.

Even though Defendants failed to cite to any of the exhibits, a review of them indicates that they contain nothing that negates Plaintiffs' allegations of unjust enrichment and Defendants have therefore failed to meet their burden on summary judgment. In fact, some of Defendants' exhibits seem to support Plaintiffs' allegations, such as the promissory notes that provide a direct link between the purchase money the Diazes paid for the villa and

Hobert Icenhower. (Doc. 62-1, Ex. P.) These promissory notes show that Hobert Icenhower borrowed from the same entities which the Diazes paid when they purchased the villa, and he borrowed amounts that correspond to the amounts the Diazes paid. The promissory notes do not negate Plaintiffs' claim of unjust enrichment. They appear to do just the opposite.

There has been no discovery in this case and Defendants have not shown discovery would be futile. Accordingly, Defendants' Motion for Summary Judgment on the second cause of action for imposition of constructive trust is **DENIED**.

### 2. Plaintiffs' Third Cause of Action for Equitable Subrogation and Indemnity

The Court has already ruled that Plaintiffs have pleaded legitimate claims of equitable subrogation and indemnity in its Order dated February 1, 2010. (See Doc. 33.) Nothing in Defendants' Motion or the attached exhibits negates the elements of Plaintiffs' claims. Accordingly, Defendants' Motion for Summary Judgment on the third cause of action for equitable subrogation and indemnification is **DENIED**.

### 3. Plaintiffs' Fourth Cause of Action for Money Had and Received

To state a claim for money had and received, a plaintiff must allege the defendant is indebted to him for a certain sum "for money had and received by the defendant for the use of the plaintiff." Schultz v. Harney, 27 Cal. App. 4th 1611, 1623 (1994). This cause of action can be used in a variety of situations. One situation is when a plaintiff has paid money to the defendant pursuant to a contract which is void for illegality, fraud or other invalidating circumstances. Id. See also 4 B.E. Witkin, California Procedure (5th ed. 2008) Pleading, § 561, p. 688-89. In Schultz, the defendant, an attorney who represented the plaintiff in a medical malpractice case, received a percentage of the settlement under a contingent-fee agreement signed by plaintiff and defendant. Schultz, 27 Cal. App. 4th at 1616-17. The contingent-fee agreement was void for illegality because it violated the provisions of the

Business and Professions Code. Id. The court held that because the contingent fee agreement was void for illegality, plaintiff had a claim for money had and received. Id. at 1623.

Plaintiffs in this case allege that they entered into a written agreement with H&G for purchase of the villa property and Hobert Icenhower later came into possession of the purchase money. (TAC ¶¶ 25, 49.) Plaintiffs also allege that the Bankruptcy Court found that the transfer of the villa from debtors to H&G was an avoidable fraudulent conveyance and the transfer of the villa from H&G to Plaintiffs was an avoidable post-petition transfer. (TAC ¶¶ 33.) The elements for the claim of money had and received are thus satisfied, as Plaintiffs paid the purchase money to various entities—which was then transferred to Hobert Icenhower—pursuant to a voided contract. Accordingly, Defendants' Motion for Summary Judgment on the fourth cause of action for money had and received is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss and **DENIES** Defendants' Motion for Summary Judgment. The parties have litigated this case extensively at the pleading stage; this is Plaintiffs' fourth complaint. The case will move forward, and the parties are precluded from filing a motion to reconsider this order. Only Jerry and Dona Icenhower have answered the TAC, and all other Defendants must file their answers within twenty-one days of the filing of this order.

**IT IS SO ORDERED.**

DATED: July 22, 2010

*Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge